UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

KEITH and PAULA PHILLIPS

      Plaintiffs,                Civil Action No. 15-14082
                                    Honorable Linda V. Parker
               v.              Magistrate Judge Elizabeth A. Stafford

RANDALL S. MILLER & ASSOCIATES, *et al.*,

      Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT RANDALL S. MILLER & ASSOCIATES, P.C., MARLA A. SKELTIS, AND BANK OF AMERICA, <u>N.A.'S MOTIONS TO DISMISS [ECF No. 21, 22, 28]</u>

### I.   INTRODUCTION

Plaintiffs Keith and Paula Phillips have filed suit based on Bank of

America, N.A.'s ("BANA") allegedly wrongful foreclosure of their property

located at 2401 Cardigan Court, Warren, Michigan 48091. [ECF No. 1].[1]

Plaintiffs sue Randall S. Miller & Associates, P.C. and Marla A. Skeltis, an

attorney with the aforementioned firm (hereinafter "Miller Law defendants")

for various alleged violations of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq.*  Plaintiffs also sue BANA for two

instances of breach of contract.  The Miller Law defendants and BANA now

_____

[1] The Honorable Linda V. Parker referred this matter to this Court for all
pretrial proceedings. [ECF No. 11].

move separately to dismiss all claims against them, and for the reasons that follow, the Court **RECOMMENDS** that these motions [ECF No. 21, 22, 28] be **GRANTED**.

## II.    BACKGROUND

The relevant facts as alleged by plaintiffs are as follows: In June 2003, Keith Phillips refinanced the subject property with a mortgage through BoA. [ECF No. 1, PageID 3].  At a later unspecified time, he fell behind on the mortgage payments and BANA agreed to a short sale of the property to a third party for $28,000.  [*Id.*, PageID 4].  In May 2013, BANA moved to evict plaintiffs from the property in the 37th District Court of Michigan.  [*Id.*].  Then on June 18, 2013, a stipulated order between plaintiffs and BANA was entered to stay the proceedings of that case pending the outcome of a federal class action case also involving the plaintiffs and BANA.  [*Id.*].  Over a year later, BANA, through the Miller Law defendants, was able to obtain a default judgment against plaintiffs in the eviction matter.  [*Id.*, PageID 5].  Upon learning of the default judgment, plaintiffs filed a motion for reconsideration in the 37th District Court.  [*Id.*]. The motion was set for hearing on November 5, 2014, but neither plaintiffs nor their attorney were notified of the hearing date because it was sent to the wrong address for the attorney.  [*Id.*].  The court denied the motion for

2

reconsideration because no one appeared on behalf of plaintiffs at the hearing, and plaintiffs appealed.  [*Id.*].

Plaintiffs were able to obtain a stay on the eviction by filing for Chapter 13 bankruptcy, and by filing with the 37th District Court an "Emergency Ex-Parte Motion for Stay of Proceedings," which was granted on November 17, 2014.  [*Id.*, PageID 6].  On November 24, 2014, defendant Skeltis emailed plaintiffs' attorney informing him that "BANA would allow for a settlement that includes paying the appraised value of the property plus all attorney fees."  [*Id.*, PageID 8].  Hours later, counsel "accepted [the] settlement framework" via email.  [*Id.*, PageID 9].  The next day, an attorney from Bryan Cave LLP representing BANA emailed plaintiffs' attorney claiming that BANA incurred $140,000 in attorneys' fees defending the federal class action suit that plaintiffs had brought against BANA.  [*Id.*, PageID 9-10].  Plaintiffs claim that, in December 2014, BANA violated the above settlement agreement by filling a "Motion to Lift Stay in the Bankruptcy Court," which was granted, and subsequently BANA refused to mediate the case, further breaching the settlement agreement. [*Id.*, PageID 10].

Plaintiffs aver that the Miller Law defendants violated various provisions of the FDCPA in their pursuit of eviction and other post-

3

foreclosure actions against plaintiffs.  [*Id.*, PageID 14-16].  Regarding BANA, they claim damages based on BANA's breach of the June 18, 2013, stipulated order to stay the case, as well as their breach of the alleged November 24, 2014 settlement agreement.  [*Id.*, PageID 22-23].  For the reasons stated below, the Court recommends that plaintiffs' claims against these defendants be dismissed.

## III.   ANALYSIS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency.  Although the federal rules only require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *see* Rule 8(a)(2), the statement of the claim must be plausible.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  As the *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must

4

show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, legal conclusions need not be accepted as true. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

5

*Iqbal*, 556 U.S. at 679.  Exhibits may be considered by the Court when they are referenced in the complaint and are central to the claims therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### a.  FDCPA claims against the Miller Law defendants

Plaintiffs contend that the Miller Law defendants violated the FDCPA while acting as debt collectors attempting to collect a debt for BANA.  [ECF No. 1, PageID 14-16].  The Miller Law defendants (hereinafter "defendants" in this section) move to dismiss these claims because they are either outside of the relevant statute of limitations, or they do not constitute an attempt to collect a debt.  The Court agrees that plaintiffs' claims fall outside the scope of the FDCPA.

Plaintiffs brought suit on November 20, 2015.  [ECF No. 1].  Under the FDCPA, jurisdiction is limited to actions brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  Plaintiffs seek to hold defendants liable for "actions taken in connection with a summary proceeding eviction action," and attempting to wrongly collect attorney's fees.  [ECF No. 27, PageID 423].  (*See* defendants' eviction complaint and judgment, ECF No. 21-4, 21-5).  The relevant allegations appear to be from November 20, 2014, onward.  [ECF No. 1, PageID 6-16]. To the extent that plaintiffs seek relief for actions before November 20,

6

2014, such claims should be dismissed pursuant to the statute of limitations.

As to the allegations from within one year of the suit, defendants argue that there was no longer a "debt" owed by plaintiffs, as defined by 15 U.S.C. § 1692a(5).  Without the existence of a debt, there can be no liability for unlawful attempts to collect a debt under § 1692e or § 1692f.  In support of this theory, defendants note plaintiffs' acknowledgement of the completed foreclosure and sheriff's sale of the property on June 15, 2012. [ECF No. 1, PageID 4; *see also* sheriff's deed, ECF No. 21-3].  Under M.C.L. § 600.3236, after the redemption period, the sheriff's deed vests the right, title, and interest in the property in the grantee, in this case extinguishing whatever debt would be owed by the plaintiffs.

Plaintiffs respond that defendants' actions constituted debt collection actionable under the FDCPA, citing *Glazer v. Chase Home Finance*, 704 F.3d 453 (6th Cir. 2013).  In *Glazer*, the court decided that mortgage foreclosure is debt collection under the FDCPA, settling a dispute within the Sixth Circuit.  704 F.3d at 459.  However, as defendants note, *Glazer* is distinguishable from the matter at hand, as it does not speak to post-foreclosure actions, where there is arguably no longer a debt to be paid.  In *Bond v. U.S. Bank Nat'l Ass'n*, No. 09-14541, 2010 WL 1265852 (E.D.

7

Mich. Mar. 29, 2010), the Honorable Avern Cohn explained that due to the lack of a "debt," post-foreclosure eviction actions do not constitute debt collections under the FDCPA. "Because U.S. Bank was not seeking to collect a debt when it initiated the summary eviction proceedings against Bond, its actions could not violate the FDCPA." *Bond*, 2010 WL 1265852, at *5. *See also Burks v. Washington Mut. Bank, F.A.*, No. 07-13693, 2008 WL 4966656, at *9 (E.D. Mich. Nov. 17, 2008) ("At the time of Trott's allegedly abusive conduct plaintiffs had no outstanding obligation to pay money because the foreclosure proceedings were complete and the home had already been sold at a sheriff's sale. . . . Therefore, plaintiffs' FDCPA claim (count IV) must fail and Trott is entitled to summary judgment").

Plaintiffs also contend that defendants "attempted to force Plaintiffs to make escrow payments to remain in the property" pursuant to a July 20, 2013, stipulated order requiring $450 escrow payments in order to stay the eviction. [ECF No. 27, PageID 431]. But the allegation of $450 escrow payments are not found within the complaint, and they do not appear to be "undisputed," as defendants claim that "[p]laintiffs and Bank of America, N.A., have never had, and are not alleged to have had, a landlord-tenant relationship." [ECF No. 21-1, PageID 356]. As it was not properly pleaded in the complaint, this claim should be dismissed.

8

Plaintiffs' final claim relates to the November 24, 2014 email from Skeltis initiating a settlement framework that would include plaintiffs' payment of the appraised value of the property plus all attorney's fees. [ECF No. 1, PageID 8]. But this falls under the rule in *Burks* that post-foreclosure actions do not constitute attempts at debt collection. Even construing the facts in the light most favorable to the plaintiffs, there was no debt to be collected when that correspondence was sent on November 24, 2014, and thus it, like all other allegations against defendants, does not fall under the purview of the FDCPA.

### b. Breach of contract claims against BANA

Plaintiffs claim that BANA is liable for breach of contract in two instances. First, they claim that BANA breached the alleged contract of the stipulated stay order of July 2013, by obtaining an order for default judgment against plaintiffs in October 2014. [ECF No. 1, PageID 4-5]. Second, they allege that an email from Skeltis on behalf of BANA constituted a contract to settle their claims by exchanging the property for its appraised value plus attorney's fees. [*Id.*, PageID 8]. They claim to have accepted this offer through a reply email from their attorney. [*Id.*, PageID 8-9]. BANA claims that there was no contract in either instance and, in the alternative, that neither contract was breached.

9

4:15-cv-14082-LVP-EAS   Doc # 45   Filed 01/10/17   Pg 10 of 15   Pg ID 746

To plead a breach of contract claim under Michigan law, a plaintiff must allege: (1) the existence of a contract between the parties; (2) the terms of the contract; (3) that defendant(s) breached the contract; and (4) that the breach caused his or her injury. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999).

BANA claims that the correct venue for adjudicating an alleged violation of the stay order is the 37th District Court of Macomb County, who undeniably found that the stipulated order was not breached, as it granted BANA default judgment in the matter. [ECF No. 1, PageID 5]. In response, plaintiffs cite case law holding that settlement stipulations, consent decrees, and judgments entered into by agreement of the parties. *See Bd. of Cty. Rd. Comm'rs for Cty. of Eaton v. Schultz*, 205 Mich. App. 371 (1994) (citing *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975) and *Republic Resources Corp. v. ISI Petroleum West Caddo Drilling Program*, 836 F.2d 462, 465 (C.A. 10 1987)); *Holmes v. Holmes*, 281 Mich. App. 575 (2008). But as BANA points out, none of these cases are applicable as the stipulated order in question is not a settlement, a consent decree, or a judgment. BANA argues that their alleged violation of the stay order should have been (and ultimately was) adjudicated by the state court in that matter, and claim preclusion now applies to challenges against it.

10

"Michigan law requires a court to apply claim preclusion if (1) there was a prior and final decision on the merits, (2) the parties in both lawsuits are the same, and (3) the matter in the second case was, or could have been, resolved in the first lawsuit." *Reid v. Thetford Twp.*, 377 F. Supp. 2d 621, 625 (E.D. Mich. 2005). Here, both parties acknowledge that the 37th District Court of Macomb County granted default judgment in the matter to which the stay applied, a tacit recognition by the court that the stay was not violated and a final decision on its merits. [ECF No. 1, PageID 5]. That underlying case involved the plaintiffs and BANA, as does this one, and the matter now before the Court – whether there was a violation of the stay order – was resolved in the first case. Hence, plaintiffs are barred from bringing a claim based on violation of the stay order here.

As to the alleged settlement offer and acceptance, the Court finds that there was no existing contract. It is well-established that courts have the authority to enforce settlement agreements upon finding that the parties have agreed on all material terms. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645–46 (6th Cir. 2001). In determining whether a settlement agreement is an enforceable contract, the Court applies state substantive law; thus, Michigan contract law governs. *McCormick v. Brzezinski*, No.

11

08–10075, 2010 WL 1463176, at *2 (E.D. Mich. April 13, 2010) (Cleland,

J.) (citations omitted).

To form a valid contract under Michigan law, there must be a meeting

of the minds, or mutual assent, with regard to all essential terms of

the contract. *Kamalnath v. Mercy Memorial Hosp. Corp.,* 194 Mich. App.

543, 548–49 (1992) (citations omitted).  "A meeting of the minds is judged

by an objective standard, looking to the express words of the parties and

their visible acts, not their subjective states of mind."  *Kloian v. Domino's*

*Pizza LLC,* 273 Mich. App. 449, 454 (2006) (citation and quotation marks

omitted).

"In exercising its equitable power to enforce a settlement, such

exercise is restricted to cases where there is no dispute or ambiguity as to

either the entry into, or the terms of the agreement."  *Riccio v. Bank of Am.*,

No. 11-12711, 2013 WL 6182837, at *3 (E.D. Mich. Nov. 26, 2013), citing

*Kukla v. National Distillers Products Co.,* 483 F.2d 619, 621 (6th Cir. 1973).

Here, the language from Skeltis' email is not indicative of an offer or an

attempt to enter into agreement.  The email indicates that "BANA *may* be

open to a settlement," and that "*[b]efore commencing the process and*

*tallying up all fees*, I thought I would reach out and see whether your client

is realistically in a position to come up with such a large sum of money."

12

[ECF No. 1, PageID 8 (emphasis added)].  Plaintiffs' response is essentially an attempt to accept a settlement agreement that had not yet been offered. [*Id.*, PageID 9].  Plaintiffs argue that the terms of the settlement were clear from Skeltis' email, but there is an obvious ambiguity as to the intent to enter into such an agreement.  As such, the requirements of a breach of contract claim are not met here.

On a final note, the Court recommends that the Miller Law defendants' request that plaintiffs' request for sanctions pursuant to Federal Rule of Civil Procedure 11(b) be denied, as plaintiffs' claims were not frivolous, even if they are unavailing.

## IV.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that defendants' motions to dismiss [ECF No. 21, 22, 28] be **GRANTED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 10, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

13

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

14

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 10, 2017.

s/Marlena Williams____
MARLENA WILLIAMS
Case Manager